IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 16, 2004 Session

## STATE OF TENNESSEE v. GARY WAYNE YOUNG

**Appeal from the Criminal Court for Davidson County**
**No. 2000-B-1055     Steve Dozier, Judge**

_____

**No. M2004-00390-CCA-R3-CD - Filed March 15, 2005**

_____

The defendant, Gary Wayne Young, appeals as of right the Davidson County Criminal Court's denial of his motion to withdraw his guilty pleas to two Class B felony drug offenses and its imposition of concurrent sentences of twenty-one years as a Range II, multiple offender.  He contends that his guilty pleas were involuntary and unknowing because he was under the influence of narcotics when he entered them and that the sentences are illegal because they are outside of the range for a multiple offender convicted of a Class B felony.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Dwight E. Scott, Nashville, Tennessee, for the appellant, Gary Wayne Young.

Paul G. Summers, Attorney General and Reporter; Michael Markham, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and John C. Zimmerman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The procedural history giving rise to this appeal began on June 30, 2000, when the Davidson County Grand Jury indicted the defendant for one count of selling one-half gram or more of cocaine, a Class B felony, and one count of possessing one-half gram or more of cocaine with the intent to sell within 1000 feet of school property, a Class A felony.  Pursuant to a plea agreement, the state reduced the charge relating to a school zone to a Class B felony offense, and the defendant pled guilty on May 21, 2002, to selling one-half gram or more of cocaine and possessing with the intent to sell one-half gram or more of cocaine, both Class B felonies.  He also received concurrent twenty-one-year sentences as a Range II, multiple offender and reserved for appeal a certified question of law concerning the propriety of a search.

On June 19, 2001, the defendant filed a motion to withdraw his guilty pleas alleging that his pleas were not knowing or voluntary. Following an evidentiary hearing, the trial court denied the motion, concluding that Rule32(f), Tenn. R. Crim. P., did not authorize it to grant a motion to withdraw a guilty plea after the judgment of conviction became final and that under State v. Hall, 983 S.W.2d 710 (Tenn. Crim. App. 1998), the judgment became final immediately upon entry of an agreed plea of guilty accompanied by a waiver of the right to appeal. On appeal, this court noted that subsequent to the trial court's denial of the motion, the supreme court decided State v. Green, 106 S.W.3d 646 (Tenn. 2003), which overruled Hall and held that a judgment of conviction becomes final thirty days after acceptance of the guilty plea. State v. Gary W. Young, No. M2001-02492-CCA-R3-CD, Davidson County (Tenn. Crim. App. Sept. 2, 2003). Concluding that the trial court did have jurisdiction to consider the motion, this court remanded the case for consideration of the Rule 32(f) motion on its merits and for consideration of the defendant's allegation regarding illegal sentencing, raised for the first time in that appeal. The defendant then filed a second motion to withdraw his guilty pleas, alleging that his pleas were not knowing or voluntary and that his sentences were void because they exceeded the statutory maximum. The trial court conducted a second hearing and subsequently denied the motion.

The defendant appeals the trial court's denial of his second motion to withdraw his guilty pleas and its conclusion that his sentences are legal. The record before us contains transcripts of the defendant's guilty plea hearing, the hearing on the defendant's first motion to withdraw his guilty pleas, and the hearing on his second motion to withdraw.

The defendant pled guilty on May 21, 2001, the date his trial was scheduled to begin. The record reflects that the defendant's attorney informed the trial court that the defendant had been experiencing health problems and was not ready to go to trial at that time. The defendant's attorney said that the defendant was under the influence of narcotic pain medications and that he had experienced health problems which made him unavailable to meet with his attorney or provide his attorney with the information necessary to subpoena defense witnesses for trial. The defendant explained that he had been hospitalized May 12 through the 15th and that he had back problems which made traveling and locating witnesses difficult. He said one of his witnesses had moved, another was across the street, and a third was at work. The defendant's attorney moved for a continuance, which the trial court denied. Following a brief conference with his attorney, the defendant acknowledged he could either enter into a plea agreement or proceed with his trial at that time. He chose the plea agreement, the terms of which his attorney and the state had discussed previously.

The trial court asked the defendant if he understood he was under oath and must answer truthfully. He responded affirmatively, and the following colloquy occurred:

> COURT: All right. Other than the medication you indicated earlier taken for your back, is there any other medication, alcohol, or anything else that you're under the influence of?

[DEFENDANT]:     No, sir.

COURT:     All right. Does the pain medication that you've indicated you were taking prevent you from understanding me here today?

[DEFENDANT]:     No, sir.

COURT:     Are you suffering from any mental illness that you're aware of?

[DEFENDANT]:     No, sir.

COURT:     All right.  You're here charged in an indictment in two counts, with the sale of over point five grams of Cocaine.  That charge can carry from eight to thirty years imprisonment and up to a one hundred thousand dollar fine, that charge allegedly occurring April 30th of 1999.  You're also charged with possession with intent to sell point five grams or more of Cocaine in December 16th, '99, within one thousand feet of a school zone.  That charge could carry from fifteen to sixty years imprisonment and up to a five hundred thousand dollar fine. Do you understand these charges against you?

[DEFENDANT]:     Yes, sir.

COURT:     Have you been able to discuss and go over these charges with [your attorney]?

[DEFENDANT]:     Yes, sir.

COURT:     All right.  The State has recommended on your plea of guilty . . . to the sale of over point five grams of a controlled substance, Schedule Two, and possession for resale of over point five grams of Cocaine, amending the school zone issue, but, they're recommending twenty-one years as a Range Two offender, which for parole purposes is at thirty-five percent. In other words, you would be eligible for parole after you've served thirty-five percent of that, and are recommending that the sentences run concurrent, one with the other. Is that your understanding?

[DEFENDANT]:     Yes, sir.

COURT:           All right.  Do you understand what [your attorney] was just talking with you about?  You are, apparently, in agreement with this sentence even though it's a Range Two at thirty-five percent, in order that the State withdraw or remove the issue about a school zone issue that would be at one hundred percent if you were found guilty of that?  Do you understand that?

[DEFENDANT]:     Yes, sir.

COURT:           Do you understand that you could have a jury trial in this case and at that jury trial, you could be represented by [your attorney]?  Do you understand that?

[DEFENDANT]:     Yes, sir.

COURT:           All right.  The State would call witnesses.  Your attorney would be able to question those witnesses for you.  Do you understand that?

[DEFENDANT]:     Yes, sir.

COURT:           All right.  You also could have witnesses brought into court to testify for you, if there were any, and you could testify yourself before that jury if you chose to.  If you did not wish to testify, I would explain to the jury that they could not use that in anyway against you because you cannot be forced to testify against yourself.  Do you understand that?

[DEFENDANT]:     Yes, sir.

COURT:           All right.  Do you understand by entering this plea there will not be trial nor an appeal and this would be your last day in court on this particular case?

[DEFENDANT]:     Yes, sir.

COURT:           And, is that what you choose to do?

| | |
|---|---|
| [DEFENDANT]: | Yes, sir. |
| COURT: | All right. Do you understand that these will be two felony convictions on your record, and if in the future you were convicted of another felony offense, these convictions would be used against you to increase the sentence that you might get in that case? Do you understand that? |
| [DEFENDANT]: | Yes, sir. |
| COURT: | All right. If you'll look at this document and see if that's your signature on it. |
| [DEFENDANT]: | Yes. |
| COURT: | All right. Did you go over this document with [your attorney]? |
| [DEFENDANT]: | Yes, sir. |
| COURT: | Did you have any questions about it? |
| [DEFENDANT]: | No, sir. |
| COURT: | All right. Is there anyone forcing you to enter this particular plea? |
| [DEFENDANT]: | No, sir. |
| COURT: | Is there anyone promising you anything other than this agreement that we've discussed previously? |
| [DEFENDANT]: | No, sir. |
| COURT: | Do you have any questions of the Court? |
| [DEFENDANT]: | No, sir. |

At this point, the state presented the factual basis for the pleas. The defendant did not dispute the facts and stated his intention to reserve a certified question of law for appeal. The state agreed, and the defendant's attorney brought the trial court's attention to a problem with the plea petition. The following discussion occurred:

| | |
|---|---|
| COUNSEL: | Judge, let me explain what the problem is. We had discussed twenty years, Range Two at thirty-five |

COUNSEL: percent. I brought up to the General the issue of preserving the right to appeal Your Honor's ruling on my Motion so Suppress. And, the General indicated well, if he wants to do that, I will–I would ask for an extra year to serve, a–a twenty-one year sentence. And, my response was, well, we've . . . already at the top of the range on Range Two. And, he said . . . maybe we'll reduce one and, then, said, well, we'll just run them both concurrent. . . . I had already written up the plea petition at twenty. And, then, when we--

STATE: For both counts.

COUNSEL: For both counts. I had written up the plea petition for twenty for both counts. And, then, when [the defendant] for the first time to me . . . advised the Court, as well as his–as well as his counsel, that he was willing to take a plea. The General then signed that plea, but, didn't read it because it says twenty years with preserving the right to appeal. And, then, we just kind of amended that petition by making it twenty-one and twenty-one. Then, as I actually looked at the judgments, I realized that even if [the defendant] is successful on his appeal, he is still stuck in the penitentiary serving a twenty-one year sentence. And, essentially, he's appealing for no real purpose other than having one last [sic] felony conviction on his record. I'm sure that's not what [his] understanding was when he entered–when he--

COURT: All right.

The defendant's attorney explained to the trial court that because the reservation of a certified question of law for appeal concerned an earlier ruling by the trial court denying the defendant's motion to suppress evidence as to only one of the offenses to which he was pleading guilty, a successful result from the appellate court would not change the length of time he would spend incarcerated. He believed the defendant did not understand that his effective sentence would remain twenty-one years even if his appeal was successful. The trial court gave the attorney an opportunity to explain this to the defendant and discuss the consequences. When the defendant and his attorney finished their discussion, the following occurred:

COURT: All right. [To the defendant] you're still under oath. [Your attorney] has, according to his information provided here to the Court, gone over the issues–uh–issues about Count One and Count Three being separate dates, and that you were entering pleas to each count. The

|  |  | issue about the suppression issue applies to Count Three. Do you understand that? |
|---|---|---|
| [DEFENDANT]: | | Yes, sir. |
| COURT: | | All right. And, you're wanting, as you've already done, to allow the judgments to be entered and this plea be entered? |
| [DEFENDANT]: | | Yes, sir. |

The hearing was concluded, and the defendant subsequently filed a timely motion to withdraw his guilty pleas.

At the hearing on the motion, the defendant testified that he had not expected to go to trial on May 21, 2001. He said that his attorney had informed him the case would be continued because he was unable to testify due to his medical condition and being under the influence of drugs. He said that as a result of an automobile accident in June 2000, he had ruptured discs in his neck and lower back and suffered from "black out spells" due to head trauma and other neurological damage. He read into evidence a letter from a doctor stating that he had three ruptured discs and compressed nerves in his arms and legs. He said that in May 2001, his back pain was severe and he was taking three types of medication: Hydrocodone, Tylox, and Lortab. He said that he took all three medications on the morning of May 21, 2001, to prepare himself for the drive to court and that he had been taking the medications for two months.

Regarding his pleas, he said he recalled that the trial court questioned his attorney about possible defense witnesses and that he and his attorney discussed his two options: "plead guilty to something [he] didn't do and go to jail for three or four years, or . . . go to court with no witnesses and go to jail for twenty-one calendar years." He said that when he entered his guilty pleas, the trial court asked him questions but that he did not recall exactly the substance of the questions. He recalled that the trial court asked him if he was under the influence of narcotics and that he replied affirmatively. He said he realized the guilty pleas were a mistake when the narcotics wore off later that afternoon. He said the narcotics affected his ability to appreciate what he was doing on the day he pled guilty. He said that he did not understand the questions asked or why he received a sentence of twenty-one years for a Class B felony. He claimed that the sentence had not been explained to him before he pled guilty but admitted that, even if it had, he might not have understood. On cross-examination, he admitted that he drove to Nashville to meet with his attorney one time before the scheduled trial date but that he did not recall the date of their meeting. He said he stopped taking his medications after May 21, 2001, the day he went into custody. When asked what prevented him from understanding the guilty plea proceedings, he claimed that his attorney had lied to him. He said that his attorney informed him his claim of illegal arrest was unsupported by the evidence but that his attorney had possessed evidence which supported his case for eight months. He said his attorney told him other lies, but he could not recall them at that time. He said that but for the lies told to him by his attorney, he would not have pled guilty.

The defendant's girlfriend, Robbie Gaines, testified that she had lived with the defendant for approximately ten years and that they had a three-year-old child. She said she was present at the courthouse on May 21, 2002, and prepared to testify at the defendant's trial. She said she was also

present during a conversation the defendant had with his attorney regarding the guilty pleas. She recalled that the attorney informed the defendant that he could plead guilty or go to trial and run the risk of receiving a longer sentence. She said that she was familiar with the defendant's physical condition in May 2002 and that she had observed him take pain medication during that period of time. She said that the medication would "knock him out" on some occasions and that other times he would be "kinda like in la-la land." On cross-examination, she said she saw the defendant take some pills on the morning of May 21, 2002, but she was uncertain what type of pills they were. She said the defendant was real quiet on the way to the courthouse that morning and not himself. When asked whether she thought the defendant's understanding of the plea proceeding was influenced by drugs, she said she could not answer the question.

The trial court denied the defendant's motion and determined it was without jurisdiction to entertain the merits of his claim. It also found that the defendant did not want to go to trial, that he made the choice to enter his guilty pleas, and that he was not under the influence of any pain medication to the extent that he did not understand his plea agreement. With regard to the defendant's claim that his attorney lied to him, the trial court noted that he failed to offer any proof concerning specific lies.

On appeal, this court concluded the trial court did have jurisdiction to consider the motion and remanded the case. In the defendant's second motion to withdraw his guilty pleas, he argued that his guilty pleas were not knowingly and voluntarily entered and that his twenty-one-year sentences were void because they exceeded the maximum term allowed for a Range II, multiple offender. At the hearing, the trial court heard the arguments of counsel and a transcript of the plea hearing was offered as an exhibit, but no additional proof was presented. The trial court denied the defendant's motion, finding that he was fully aware of the nature and consequences of entering his pleas and that he voluntarily chose to plead guilty. The trial court noted that at the hearing on his first motion, the defendant was able to recall detailed discussions he had with his attorney regarding his decision to plead guilty. The trial court also recalled the plea hearing and that it had gone to "additional lengths" to ensure the defendant was voluntarily entering the pleas. The trial court recalled that it asked the defendant if he was under the influence of drugs at the plea hearing and that the defendant stated he was taking medication but indicated the medication did not prevent him from understanding the nature and consequences of his pleas. Regarding the sentencing issue, the trial court concluded the sentence was proper under Hicks v. State, 945 S.W.2d 706 (Tenn. 1997), which held that sentences with a length in one range and a release eligibility in another range were valid when imposed as the result of a plea agreement.

## I. GUILTY PLEAS

The defendant contends that his guilty pleas were not knowing or voluntary because he was under the influence of narcotics during the plea hearing and that under Rule 32(f), Tenn. R. Crim. P., withdrawal of his pleas was necessary to correct manifest injustice. The state contends that the record demonstrates the defendant's guilty pleas were knowingly and voluntarily entered. We agree with the state.

Pursuant to Rule 32(f), Tenn. R. Crim. P., a defendant may seek to withdraw a guilty plea for any fair and just reason before the trial court imposes the sentence. Once the trial court imposes the sentence but before the judgment becomes final, it "may set aside the judgment of conviction and permit the defendant to withdraw the plea" in order to correct manifest injustice. Tenn. R. Crim. P.

32(f). To avoid manifest injustice, the trial court may allow the defendant to withdraw a guilty plea that was "not voluntarily, understandingly, or knowingly entered" or was entered because of mistake. State v. Turner, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). Conversely, a trial court will not, as a general rule, permit the withdrawal of a plea of guilty to prevent manifest injustice when the basis of the relief is predicated upon (a) an accused's change of heart, (b) the entry of the plea to avoid harsher punishment, or (c) an accused's dissatisfaction with the harsh punishment imposed by a trial court or a jury. Id. We are bound to uphold the trial court's determinations regarding the withdrawal of a guilty plea unless the record demonstrates that it abused its discretion. Id.; State v. Drake, 720 S.W.2d 798, 799 (Tenn. Crim. App. 1986).

The defendant insists that he did not understand what occurred at the plea hearing, what sentences he was to receive, or the consequences of his pleas. The record reflects otherwise. The transcript of the plea acceptance indicates the defendant responded coherently to the trial court's questions. The defendant admitted he was under the influence of narcotics but informed the trial court that the medication did not prevent him from understanding the proceedings. The trial court reviewed with the defendant both charges in the indictment and noted the state withdrew the portion of the charge relating to drug possession offenses committed within 1000 feet of a school zone, which would have carried a sentence requiring one hundred percent service. The trial court reiterated that the state had recommended sentences of "twenty-one years as a Range Two offender, which for parole purposes is at thirty-five percent," pursuant to the plea agreement. The defendant responded that he understood the charges, that he reviewed them with his attorney, and that he understood the state's sentence recommendations. The trial court reviewed the litany of constitutional rights the defendant would waive by pleading guilty and asked if he understood. The defendant answered affirmatively. He also claimed that he understood the effect the two convictions would have upon his criminal record and that nothing forced him to enter his pleas. At the conclusion of the colloquy, the defendant chose to plead guilty and said he had no questions for the trial court.

The defendant argues his lack of understanding concerning the sentence he was to receive is reflected in various statements made by the state and his attorney during the guilty plea hearing. The defendant compares a statement made by the prosecutor concerning his sentence range with a statement made by the trial court shortly thereafter. The prosecutor stated that "the defendant will be pleading as a Range Three, but, at thirty-five percent by agreement with the parties." The trial court later addressed the defendant and stated, "[T]hey're recommending twenty-one years as a Range Two offender, which for parole purposes is at thirty-five percent." The record reflects that the length of the recommended sentences in this case are twenty-one years with a release eligibility of thirty-five percent. The defendant indicated during the hearing that he understood and agreed to each of his twenty-one year sentences with thirty-five percent release eligibility. The defendant also refers to his attorney's statement concerning whether the defendant understood that a successful result from the appellate court on his certified question of law would not change the length of time he would be incarcerated. The record reflects that the attorney raised this concern and that the trial court allowed the defendant and his attorney an opportunity to discuss the consequences that the appeal could have on his sentence. Following their discussion, the defendant informed the trial court he understood and stated his intention to go forward with the guilty pleas. We do not believe these statements indicate the defendant did not understand the sentences he received. Rather, the record reflects that the defendant's sentences were discussed and that his attorney made efforts to ensure the defendant understood what was occurring at the hearing. We conclude that the defendant's pleas

-9-

were voluntarily and knowingly entered and that withdrawal of the pleas is not necessary to correct manifest injustice.

## II. SENTENCING

The defendant contends that each of his sentences of twenty-one years are illegal because they exceed the statutory maximum of twenty years for a Range II offender convicted of a Class B felony. The state argues that his sentences are valid and legal as within the statutorily authorized term of imprisonment for a Class B felony. We agree with the state.

The sentences in this case exceed the twenty-year maximum sentence for a Range II offender convicted of a Class B felony offense, but are within the statutorily prescribed range for Class B offenses. The sentence range for a Range II, multiple offender convicted of a Class B felony is not less than twelve nor more than twenty years. See T.C.A. § 40-35-112(b)(2). The sentence range for a Range III, persistent offender convicted of a Class B felony is twenty to thirty years. See T.C.A. § 40-35-112(c)(2). The authorized term of imprisonment for Class B felony offenses is not less than eight nor more than thirty years. See T.C.A. § 40-35-111(b)(2). We are aware that "a judgment imposed by a trial court in direct contravention of express statutory provisions regarding sentencing is illegal and is subject to being set aside at any time, even if it has become final." State v. Mahler, 735 S.W.2d 226, 228 (Tenn. 1987). However, the use of offender classification and release eligibility as plea bargaining tools is a permitted practice. See McConnell v. State, 12 S.W.3d 795, 798 (Tenn. 2000); Hicks v. State, 945 S.W.2d 706, 709 (Tenn. 1997). The question presented is whether the trial court had jurisdiction to impose an agreed sentence the length of which exceeded the maximum sentence in the designated range for his offender classification but not the total maximum for the offense class.

The defendant relies on Woods v. State, 928 S.W.2d 52 (Tenn. Crim. App. 1996), in which the petitioner received concurrent ten-year sentences as a Range I, standard offender for each of three Class C robbery offenses. In Woods, this court concluded that once range is established "the statute provides specific legal boundaries within which the determinative sentence must fall" and reversed the petitioner's sentences. Id. at 54. It stated that "[a]ny sentence outside the statutory range of sentences would be illegal and thus a void sentence for purposes of post-conviction relief." Id. Although this holding supports the defendant's argument, we note that a conflict exists in this court's decisions. In Bland v. Dukes, this court analyzed the relevant supreme court cases and concluded that sentences above the range but still within the statutory maximum for the offense are legal. 97 S.W.3d 133, 136 (Tenn. Crim. App. 2002). In Hicks, the supreme court concluded that such hybrid sentences did not contravene the 1989 Sentencing Act and held that "a knowing and voluntary guilty plea waives any irregularity as to offender classification or release eligibility." 945 S.W.2d at 709. We believe Bland is the appropriate case to follow. We conclude the defendant's sentences are legal.

Based on the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
JOSEPH M. TIPTON, JUDGE